UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MAMOUN EL-HASSEN,[1]

                   Plaintiff,

                                        1:12-CV-1035
v.                                        (GTS/RFT)

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES,

                   Defendant.

_____

APPEARANCES:                             OF COUNSEL:

MAMOUN EL-HASSAN
  Plaintiff, *Pro Se*
919 2nd Street
Washington, DC 20002

HON. ERIC T. SCHNEIDERMAN            GREGORY J. RODRIGUEZ, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendant
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this *pro se* employment civil rights action filed by

Mamoun El-Hassan ("Plaintiff") against the New York State Department of Correctional

Services ("Defendant"), is Defendant's motion for summary judgment. (Dkt. No. 32.) For the

reasons set forth below, Defendant's motion is granted, and Plaintiff's Complaint is dismissed.

---

[1]      Plaintiff's last name appears to be misspelled as "El-Hassen" on the docket sheet.
While Plaintiff's last name is spelled "El-Hassen" in the typed caption and signature block of his
Complaint, his last name is spelled "El-Hassan" whenever it is signed in the submissions. As a
result, the Clerk of the Court is directed to correct the spelling of Plaintiff's last name on the
docket.

# I. RELEVANT BACKGROUND

## A. Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges that, while he worked as a Muslim Chaplain at Elmira and Gowanda Correctional Facilities between September 2007 and February 2009, Defendant discriminated against him based on his African-American race and Muslim religion, and retaliated against him for reporting the discrimination to a deputy superintendent. (Dkt. No. 1.) Plaintiff's Complaint alleges that Defendant committed this discrimination and retaliation by wrongfully suspending Plaintiff's employment, docking his pay, denying his request to use a county bus to commute to work, making negative accusations regarding his work performance, stopping delivery of "Muslim oils" for Muslim inmates, denying approval of his leave requests, blocking his transfer to another correctional facility, harassing him in a meeting, and then terminating his employment. (*Id.*)

Based on these factual allegations, Plaintiff's Complaint asserts three claims against Defendant: (1) a claim that Defendant discriminated against him based on his race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) a claim that Defendant discriminated against him based on his religion, in violation of Title VII; and (3) a claim that Defendant retaliated against him for reporting the aforementioned discrimination, in violation of Title VII. (*Id.*)

Familiarity with these claims, and the factual allegations supporting them, is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

**B.  Parties' Briefing on Defendant's Motion for Summary Judgment**

**1.  Defendant's Memorandum of Law**

Generally, in its memorandum of law, Defendant argues that it is entitled to judgment as a matter of law based on the current record for three reasons.  (Dkt. No. 32, Part 2 [Def.'s Memo. of Law].)  First, Defendant argues, Plaintiff's racial discrimination claim must be dismissed because he has failed to exhaust his administrative remedies with regard to that claim in that he failed to identify "race" as a ground of the claimed discrimination on the EEOC Charge of Discrimination form that he completed.  (*Id.*)

Second, Defendant argues, to the extent Plaintiff's claims are based on events occurring before July 8, 2008, those claims must be dismissed as untimely, because those events occurred more than 300 days before he filed a complaint with the EEOC on May 4, 2009.  (*Id.*)

Third, Defendant argues, Plaintiff's religious discrimination claim and retaliation claim must be dismissed for the following reasons: (a) he cannot establish a prima facie case of racial discrimination given the lack of evidence establishing that he suffered discriminatory adverse employment actions, or that those actions occurred under circumstances permitting an inference of discrimination; (b) he cannot establish a prima facie case of retaliation given the lack of evidence establishing that he was engaged in protected activity when he advised the superintendent that his request to take the bus was denied by the deputy superintendent, that he suffered a sufficiently serious adverse action, or that the protected activity caused the temporally distant adverse action; (c) in any event, Defendant has shown a legitimate non-discriminatory reason for taking the alleged discriminatory and/or retaliatory actions, i.e., that Plaintiff engaged in inappropriate conduct during the term of his Disciplinary Evaluation Period in violation of his Stipulation of Settlement of his suspension; and (d) moreover, Plaintiff cannot demonstrate that

the reasons given by Defendant for its adverse action were not the true reasons but were a pretext for discrimination and/or retaliation (especially given the but-for causation standard for Title VII retaliation claims set forth by the Supreme Court in *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 133 S.Ct. 2517, 2534 [2013]).  (*Id.*)

### 2. Plaintiff's Opposition

Generally, in opposition to Defendant's motion, Plaintiff submits a response to Defendant's Statement of Facts and three pages of exhibits.  (Dkt. No. 33 [Plf.'s Rule 7.1 Response].)

### 3. Defendant's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant asserts two arguments.  (Dkt. No. 34 [Def.'s Memo. of Law].)  First, Defendant argues, all properly supported facts asserted by Defendant must be accepted as true for purposes of its motion because Plaintiff has failed to admit or deny each of its factual assertions in matching numbered paragraphs and support each denial with a specific citation to the record, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court.  (*Id.*)

Second, Defendant argues, Plaintiff has failed to create a genuine issue of material fact warranting the denial of Defendant's motion for the following reasons: (a) he has failed to adduce an affidavit; (b) none of the three documents he has adduced are before the Court in admissible form; and (c) indeed, most of the assertions contained in his response to Defendant's Statement of Facts (which is not verified) either are conclusory in nature or impermissibly contain legal arguments.  (*Id.*)

### C. Statement of Undisputed Material Facts

The following material facts have been asserted and supported by Defendant in its

Statement of Material Facts, and not denied in a matching numbered paragraph with a supporting record citation by Plaintiff in his response thereto, and thus admitted pursuant to Local Rule 7.1 of the Local Rules of Practice for this Court, as explained below in Part II.A. of this Decision and Order. (*Compare* Dkt. No. 32, Attach. 1 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response].)

<u>Plaintiff's Notice of Discipline, Stipulation of Settlement<br>and Disciplinary Evaluation Period</u>

1.      Peter Brown served as DOCS' Director of Labor Relations until he retired from DOCS in April 2010.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 1 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

2.      As Director of Labor Relations, Director Brown ran the Office of Labor Relations, which consisted of a number of deputy directors, associates and representatives who investigated and did all of the administrative work associated with disciplinary related matters. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 2 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

3.      On June 12, 2007, Director Brown issued a Notice of Discipline to Plaintiff while he was employed at Elmira Correctional Facility ("Elmira C.F.").  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 3 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

4.     Pursuant to the Notice of Discipline, Plaintiff was informed that DOCS was implementing a penalty of dismissal from service and loss of any accrued annual leave pursuant to the Disciplinary Procedure contained in Article 33 of the Agreement between the State of New York and the Public Employees Federation for the Professional, Scientific and Technical Services Unit.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 4 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 4 [Plf.'s Rule 7.1 Response, denying part of fact asserted but not supporting denial with accurate record citation but merely an exhibit that does not controvert fact asserted].)

5.      The reasons for the discipline are set forth in the Notice of Discipline.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 5 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

6.     Plaintiff was suspended without pay beginning on June 12, 2007.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 6 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

7.     By Stipulation of Settlement, Plaintiff (who was represented by counsel) and DOCS agreed that, in full settlement of the Notice of Discipline, Plaintiff "shall voluntarily transfer from his position as a Chaplain at the Elmira C.F. and accept a position with the Gowanda Correctional Facility" and that said transfer would be effective November 1, 2007 (*Compare* Dkt. No. 32, Attach. 1, at ¶ 7 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

8.      The Stipulation of Settlement was signed by Virginia Kirby, Labor Relations

Representative, on behalf of DOCS, because she was responsible for Elmira C.F. at that time.

(*Compare* Dkt. No. 32, Attach. 1, at ¶ 8 [Def.'s Rule 7.1 Statement, asserting fact and supporting

assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to

deny fact in matching numbered paragraph with supporting record citation].)

9.      In accordance with the Stipulation of Settlement, Plaintiff was also to serve a

period of suspension and then was to be placed on medical leave of absence until he began

working at Gowanda Correctional Facility ("Gowanda C.F.").  (*Compare* Dkt. No. 32, Attach. 1,

at ¶ 9 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record

citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered

paragraph with supporting record citation].)

10.     Pursuant to the Stipulation of Settlement, Plaintiff also had to serve a general

Disciplinary Evaluation Period ("DEP") of two (2) years, from November  1, 2007, to October

31, 2009.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 10 [Def.'s Rule 7.1 Statement, asserting fact

and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 7 [Plf.'s Rule 7.1

Response, denying part of fact but not supporting denial with accurate record citation, and in any

event acknowledging that the statement that the DEP was "12 month[s]" was a "mistake"].)

11.     During a DEP, a grievant is evaluated on a monthly basis to ensure compliance

and any type of misconduct is reported to the Office of Labor Relations.  (*Compare* Dkt. No. 32,

Attach. 1, at ¶ 11 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with

accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in

matching numbered paragraph with supporting record citation].)

12. During the DEP, documents provided by the facility are evaluated to determine if a violation of the DEP occurred. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 12 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

13. If a violation has occurred during the DEP, the Office of Labor Relations would consider warning the employee. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 13 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

14. If a violation occurred during the DEP and the employee had been previously warned, the Office of Labor Relations would proceed with implementation of the proposed penalty. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 14 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

15. If Plaintiff was found to have engaged in any misconduct during his DEP, DOCS had the right to impose discipline up to and including termination of Plaintiff without resort to the disciplinary procedures of Article 33 of the PEF/State Agreement and without resort to the grievance procedures of Article 34 of the PEF/State Agreement. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 15 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

16.     In accordance with the Stipulation of Settlement, prior to the imposition of any discipline, DOCS had to provide written notice specifying the reasons for the proposed imposition of the penalty to Plaintiff. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 16 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

17.     Plaintiff would have the opportunity to present any explanation or documentation in opposition to the imposition of the proposed discipline, which DOCS would consider before deciding whether to impose the penalty. After such consideration, the Director of Labor Relations was to make a decision regarding the imposition of the penalty and notify Plaintiff in writing. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 17 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

18.     As set forth in the Stipulation of Settlement, the parties are bound by the decision regarding the imposition of the penalty and the decision is not subject to appeal through the contractual grievance procedures. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 18 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

19.     When an employee is placed on a DEP, the matter is assigned to the representative in the Office of Labor Relations who is assigned to the geographical location of the employee's work place. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 19 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s

Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

20.     That representative would then handle the administrative case work associated with that employee's DEP, including the receipt and review of periodic reports from the facility concerning the employee' s work performance and reports of misconduct.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 20 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

21.     Matthew Bloomingdale was the representative from the Office of Labor Relations who handled the administrative case work regarding Plaintiff during his DEP at Gowanda C.F.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 21 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

22.     Since September 2007, and at all times relevant to the allegations contained in the complaint, Leslie McNamara was employed by DOCS as the Deputy Superintendent of Programs at Gowanda C.F.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 22 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

23.     Deputy Superintendent McNamara retired from DOCS in December 2009.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 23 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

24.     As Deputy Superintendent of Programs, Deputy Superintendent McNamara was responsible for the supervision of all program areas including academics, vocational trades, library and treatment programs.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 24 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

25.     Deputy Superintendent McNamara also supervised ministerial employees that consisted of a Deacon, Protestant Chaplain, Catholic Chaplain and Muslim Chaplain.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 25 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

<u>Plaintiff's Employment as a Muslim Chaplain at Gowanda C.F.</u>

26.     Plaintiff first began working at Gowanda C.F. in November 2007 as a Muslim Chaplain.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 26 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

27.     As a Muslim Chaplain, or Imam, at Gowanda C.F., Plaintiff was responsible for, among other things, leading the primary congregational worship and prayer services for inmates of the Muslim faith at Gowanda C.F., maintaining and recording the proper inventory of oils ordered by Muslim inmates, making rounds and visiting inmates in their housing units, preparing various reports and paperwork, responding to various inquiries made by inmates, and handling reports of grave illness and death in an inmate's family and making arrangements for inmate visits in those situations.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 27 [Def.'s Rule 7.1 Statement,

asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

28.    At the time Plaintiff arrived at Gowanda C.F., Deputy Superintendent McNamara was made aware that he was to serve a general DEP of two (2) years, commencing on November 1, 2007, and running through October 31, 2009.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 28 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

29.    As Deputy Superintendent of Programs and Plaintiff's supervisor, Deputy Superintendent McNamara was responsible for monitoring Plaintiff s employment at Gowanda C.F. during his DEP and to provide monthly DEP reports to the Director of Labor Relations of DOCS concerning the nature of any misconduct on the part of Plaintiff.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 29 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

<u>Plaintiff's First Alleged Absence Without Leave</u>
<u>and the First Report of Formal Counseling</u>

30.    On January 1, 2008, Plaintiff was scheduled to work from 8:00 a.m. to 4:00 p.m. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 30 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

31.    On or about January 4, 2008, it came to Deputy Superintendent McNamara's attention that Plaintiff was not in the facility as scheduled on January 1, 2008.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 31 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

32.    Because Deputy Superintendent McNamara was not aware that Plaintiff had any approved time off or an approved schedule change, she asked Plaintiff to provide her with an explanation for his absence.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 32 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

33.    By memorandum dated January 7, 2008, Plaintiff explained that, when he had come to work on January 1, 2008, an unknown officer had met him in the front and advised him that everything was shut down and that there was no officer at his post. Plaintiff also stated that the Watch Commander had asked him to provide a phone number so that he could be called in case of an emergency.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 33 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

34.    Based on Plaintiff s response, Deputy Superintendent McNamara asked the Watch Commander and officer on duty at the front to provide her with memoranda concerning the events that occurred on January 1, 2008.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 34 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt.

No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

35.     By memorandum dated January 9, 2008, R. Perison, Lieutenant, advised Deputy Superintendent McNamara that he was on duty as the Watch Commander on that date. He advised Deputy Superintendent McNamara that Plaintiff had entered the chart office at approximately 12:00 p.m. and had stated that, because there was no officer coverage in his area, he saw no reason to stay.  Lt. Perison and Sgt. Parisi had both informed Plaintiff that there would be coverage at 3:00 p.m., but Plaintiff had again stated that, if there was no coverage, then there was no reason for him to stay.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 35 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 5 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

36.     Lt. Perison had not been familiar with Plaintiff's schedule or responsibility and had repeatedly advised him that it was his decision to stay or leave the facility. Lt. Perison advised Deputy Superintendent McNamara that at no time had he directed or instructed Plaintiff to leave the facility on January 1, 2008.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 36 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 5 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

37.     By memorandum date January 9, 2008, Sergeant S. Parisi advised Deputy Superintendent McNamara that he had informed Plaintiff on January 1, 2008, that he would have coverage at 3:00 p.m.  Sgt. Parisi further advised Deputy Superintendent McNamara that he had also informed Plaintiff that, if he was going to call inmates to his area, he should wait until the

officer coverage was in place.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 37 [Def.'s Rule 7.1

Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No.

33, at ¶ 5 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate

record citation].)

     38.     Sgt. Parisi advised Deputy Superintendent McNamara that he had never

instructed Plaintiff to leave the facility.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 38 [Def.'s Rule

7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt.

No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with

supporting record citation].)

     39.     As a Muslim Chaplain at Gowanda C.F., Plaintiff had an office in the facility.

(*Compare* Dkt. No. 32, Attach. 1, at ¶ 39 [Def.'s Rule 7.1 Statement, asserting fact and

supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response,

failing to deny fact in matching numbered paragraph with supporting record citation].)

     40.     At times, Plaintiff would have inmates brought to his office by an officer for

meetings. That officer would also stay with the inmate near Plaintiff's office during the meeting

and then escort the inmate back to his housing unit.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 40

[Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation]

*with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph

with supporting record citation].)

     41.     When officer coverage was unavailable, Plaintiff had a number of other duties

and responsibilities that did not require officer coverage, such as making rounds and visiting

inmates in their housing units, preparing various paperwork and written responses to inquiries

made by inmates, and working on the inventory for Muslim oils ordered by inmates. The only

restriction on Plaintiff when there was not officer coverage was his inability to meet with inmates in his office. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 41 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

42.     Based on Plaintiff s failure to work as scheduled on January 1, 2008, and the results of Deputy Superintendent McNamara's investigation, Plaintiff was given a "Report of Formal Counseling – AWOL" by Attendance Control Officer Parisi. As Plaintiff's supervisor, Deputy Superintendent McNamara signed the report on January 28, 2008. Plaintiff also signed the report. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 42 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

43.     Deputy Superintendent McNamara provided a memorandum to the Director of Labor Relations of DOCS, noting that Plaintiff was charged with an AWOL on January 1, 2008, for failure to be at work as scheduled. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 43 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

44.     Director Brown issued Plaintiff a Warning Letter dated January 15, 2008, concerning this unsatisfactory performance during his DEP. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 44 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

45.     On July 25, 2008, Deputy Superintendent McNamara met with Plaintiff to discuss his performance for his six month review as part of a routine yearly evaluation period done for all staff that she supervised, including ministerial staff, and to discuss various work-related issues.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 45 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

46.     At that time, Deputy Superintendent McNamara advised Plaintiff that he had received an unsatisfactory rating on his evaluation and Plaintiff signed the evaluation.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 46 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

47.     After receiving the evaluation, Plaintiff became extremely angry and displayed a violent act, which prevented Deputy Superintendent McNamara from discussing his work performance issues with him.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 47 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

48.     In her memorandum of July 30, 2008, to the Labor of Relations Associate, Deputy Superintendent McNamara included the following among Plaintiff's work performance issues: poor relationships that Plaintiff had with security staff; lack of knowledge of DOCS' policies and procedures; and poor communication skills. She also noted in her memorandum that Plaintiff had made a statement to her that "80% of the employees don't like him as he is Muslim." (*Compare* Dkt. No. 32, Attach. 1, at ¶ 48 [Def.'s Rule 7.1 Statement, asserting facts and supporting

assertions with accurate record citations] *with* Dkt. No. 33, at ¶¶ 3, 16 [Plf.'s Rule 7.1 Response, denying part of facts but not supporting denials with accurate record citations].)

49.     By memoranda dated July 25, 2008, and July 30, 2008, from Deputy Superintendent McNamara, Representative Bloomingdale was advised of various issues regarding Plaintiff s work performance that led Deputy Superintendent McNamara to give Plaintiff an unsatisfactory rating at the time of his six-month review which was part of the annual performance evaluation process given to all employees.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 49 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

<u>Plaintiff's Request for Reasonable Accommodation</u>

50.     In July 2008, Plaintiff made a written Request for Reasonable Accommodation to use the county bus to get to work, which contained a handwritten note from a doctor, stating "poor vision (cataracts)."  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 50 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

51.     Plaintiff did not require permission from Gowanda C.F. to take a bus to get to work however, Plaintiff s request to use the bus to commute to work was made due to medical reasons, which required the facility to change his work schedule to accommodate the bus schedule.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 51 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

52.     By memorandum dated July 11, 2008, Acting Deputy Superintendent for Programs Dzierba advised Plaintiff that he was in receipt of his Request for Reasonable Accommodation to change his schedule, but advised that the medical documentation must be written on official stationary from the doctor's office.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 52 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

53.     Acting Deputy Superintendent advised Plaintiff to return the Request for Reasonable Accommodation with the appropriate medical documentation.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 53 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

54.     On or about July 21, 2008, Deputy Superintendent McNamara received a letter from Tariq A. Sheikh, M.D., concerning Plaintiff s request to take the county bus.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 54 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

55.     On or about July 21, 2008, Deputy Superintendent McNamara informed Plaintiff of her receipt of his Request for Reasonable Accommodation along with the medical verification and asked that he submit a work schedule that he was seeking.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 55 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

56.     By "Supervisor's Response to Request for Reasonable Accommodation" dated August 26, 2008, Deputy Superintendent McNamara forwarded Plaintiff s application to the DOCS' ADA Coordinator and advised Plaintiff that the Coordinator would be contacting him regarding his request.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 56 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

57.     Deputy Superintendent McNamara did not make any determinations concerning Plaintiff s request for a reasonable accommodation and expected the DOCS' ADA Coordinator to address Plaintiff's needs.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 57 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 8 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

58.     Plaintiff was using the bus to commute to work at the time he made his request.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 58 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

59.     At no time did Deputy Superintendent McNamara advise Plaintiff that he could not take the bus to commute to work.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 59 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 8 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

60.     Plaintiff rode the bus to commute to and from work for the remainder of time that he was at Gowanda C.F.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 60 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

### Plaintiff's Alleged Failure to Follow Inventory Procedures as Muslim Chaplain

61.     As a Muslim Chaplain, Plaintiff was required to maintain a proper inventory of Muslim oils at Gowanda C.F., complete order forms for oils that were ordered by inmates and keep a balance sheet regarding the inventory of existing oils at the facility. In order for new Muslim oils to be ordered by the facility, a proper inventory of existing oils needed to be maintained at all times.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 61 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 11.a [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

62.     Gowanda C.F.'s Coordinating Chaplain Maloney spoke to Plaintiff several times about the issue of maintaining a proper inventory of Muslim oils because he was not doing it properly.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 62 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 11.a [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

63.     Chaplain Maloney discussed with Plaintiff on several occasions the proper manner in which to maintain the inventory, and showed him how to properly prepare the necessary paperwork. Despite this, Plaintiff continued to improperly maintain the inventory of the Muslim oils at Gowanda C.F.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 63 [Def.'s Rule 7.1

Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 11.a [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

64. Deputy Superintendent McNamara temporarily discontinued the delivery of Muslim oils for a period of time in 2008, because Plaintiff had disregarded inventory procedures and could not account for missing oils and records. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 64 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 11.b [Plf.'s Rule 7.1 Response, denying knowledge of fact, which is insufficient, and in any event not supporting any denial of fact with accurate record citation].)

65. Once an accurate inventory was complete and new procedures were put in place, the delivery of inmate oils was resumed immediately. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 65 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 11.b [Plf.'s Rule 7.1 Response, denying knowledge of fact, which is insufficient, and in any event not supporting any denial of fact with accurate record citation].)

<u>Plaintiff's Second Alleged Absence Without Leave</u>
<u>and the Second Report of Formal Counseling</u>

66. By memorandum dated November 8, 2008, Plaintiff requested that, because he had training in Albany on "Monday 17 and Tuesday 11/8/08," he be permitted to take his regular day off on November 21, 2008, and take off work on November 22, 2008. Deputy Superintendent McNamara advised Plaintiff that his request was disapproved. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 66 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

67.     On or about November 25, 2008, Deputy Superintendent McNamara learned that Plaintiff was absent from work on Saturday, November 22, 2008, despite not having approval for that time-off.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 67 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

68.     Deputy Superintendent McNamara met with Plaintiff to discuss his absence and he advised that Mr. Awopetu had approved his time-off.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 68 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

69.     Akinyemi A. Awopetu held the position of Assistant Deputy Superintendent for Programs at Gowanda C.F. from 2008 to 2011.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 69 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

70.     On November 20, 2008, Assistant Deputy Superintendent Awopetu was the Acting Deputy Superintendent for Programs at Gowanda C.F.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 70 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

71.     Deputy Superintendent McNamara called Assistant Deputy Superintendent Awopetu during her meeting with Plaintiff and put him on speaker phone. Assistant Deputy Superintendent Awopetu advised that he had approved Plaintiff's request for time off for only

Friday, November 21, 2008, and had never discussed with Plaintiff his request for time off for Saturday, November 22, 2008. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 71 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 12 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

72.     Assistant Deputy Superintendent Awopetu further advised Deputy Superintendent McNamara that he saw a time off slip for November 22, 2008, only after Plaintiff had already left the facility, and that request was not approved. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 72 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 12 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

73.     Plaintiff never made a request to Assistant Deputy Superintendent Awopetu to take time off on Saturday, November 22, 2008, before he left the facility on November 20, 2008. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 73 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 12 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

74.     As an employee at Gowanda C.F., Plaintiff was required to submit a time off slip and obtain approval regarding any time-off request before taking time off. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 74 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

75.     During the meeting of November 25, 2008, Plaintiff blamed Assistant Deputy Superintendent Awopetu for his alleged failure to ensure that his request for time off on

November 22, 2008, was approved prior to that date. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 75 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

76.     Assistant Deputy Superintendent Awopetu received a "Report of Formal Counseling – AWOL (CIVILIAN)" dated November 26, 2008, from Lt. R. Parisi, Attendance Control Officer. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 76 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

77.     The Formal Counseling Report issued by Lt. Parisi indicated that Plaintiff was charged with AWOL and would be docked one day's pay for his AWOL of November 22, 2008. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 77 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

78.     Deputy Superintendent McNamara sent a memorandum dated December 1, 2008, to Matthew Bloomingdale concerning the events that occurred during the meeting with Plaintiff on November 25, 2008. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 78 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

79.     On or about December 1, 2008, during the Employee Disciplinary Evaluation Period, the Director of Labor Relations was notified by Gregory J. Kadien, Superintendent of Gowanda C.F., that Plaintiff was charged with his second AWOL on November 22, 2008.

(*Compare* Dkt. No. 32, Attach. 1, at ¶ 79 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

80.     Based on the report of Formal Counseling, Assistant Deputy Superintendent Awopetu, in his capacity as Acting Deputy Superintendent of Programs, met with Plaintiff as directed by Deputy Superintendent McNamara for a counseling session on December 4, 2008. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 80 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

81.     During the counseling session on December 4, 2008, Plaintiff was advised that he was charged with an AWOL and would be docked a day's pay regarding his AWOL of November 22, 2008. Assistant Deputy Superintendent Awopetu signed the Report of Formal Counseling after the meeting with Plaintiff, but Plaintiff refused to sign the report. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 81 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

82.     Deputy Superintendent McNamara issued a Formal Counseling memorandum to Plaintiff on December 29, 2008, due to Plaintiff s unauthorized absence from work on November 22, 2008, and his behaviors of lying, insolence and refusing direct orders during the meeting with Plaintiff on November 25, 2008. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 82 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

83. Plaintiff signed a copy of the December 29, 2008, formal counseling memorandum. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 83 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

84. Deputy Superintendent McNamara notified the Bureau of Labor Relations about the formal counseling of December 29, 2008, in a DEP monthly report. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 84 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

<u>Alleged False Statements in Plaintiff's Monthly Chaplain's Report
and the Third Report of Formal Counseling</u>

85. On December 28, 2008, Plaintiff submitted a monthly chaplain's report. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 85 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

86. Deputy Superintendent McNamara met with Plaintiff to discuss the monthly chaplain 's report he submitted. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 86 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

87. Deputy Superintendent McNamara found that several statements contained in Plaintiff s monthly chaplain's report were false or misleading. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 87 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record

citation] *with* Dkt. No. 33, at ¶ 13 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

88.     For example, Plaintiff stated that he visited housing areas on a daily basis, but advised that he only went to the housing unit of his inmate clerk.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 88 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

89.     Moreover, Plaintiff advised in his monthly report that he spoke to the Superintendent of Gowanda C.F. regarding inmate matters on a daily basis; however, Deputy Superintendent McNamara spoke with the Superintendent and he informed her that this was not true.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 89 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

90.     Furthermore, Plaintiff noted that he had contact with Deputy Superintendent McNamara on a daily basis, which was not true as Plaintiff had never discussed inmate concerns with her.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 90 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

91.     On January 9, 2009, Deputy Superintendent McNamara issued Plaintiff another formal counseling memorandum based on the false and inaccurate statements contained in his monthly chaplain's report, which was in violation of Employee Rule Book, 3.4 – Falsification of Records.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 91 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

Plaintiff's Alleged Failure to Properly Follow Procedures
Regarding the Grave Illness of an Inmate's Family Member
and the Fourth Report of Formal Counseling

92.     After Plaintiff arrived at Gowanda C.F., Coordinating Chaplain Maloney advised

him of the importance of properly handling situations involving the grave illness or death of an

inmate's family member, and that it is one of the most important duties of a Chaplain at DOCS.

(*Compare* Dkt. No. 32, Attach. 1, at ¶ 92 [Def.'s Rule 7.1 Statement, asserting fact and

supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 17.a [Plf.'s Rule 7.1

Response, denying part of fact but not supporting denial with accurate record citation].)

93.     Chaplain Maloney advised Plaintiff that it was critical for Chaplains to handle

situations involving the grave illness or death of an inmate's family member in a timely fashion

as set forth in Directive 4206 entitled, "Notification of Death or Grave lllness of lnmate Family

Members."  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 93 [Def.'s Rule 7.1 Statement, asserting fact

and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 17.a [Plf.'s Rule 7.1

Response, denying part of fact but not supporting denial with accurate record citation].)

94.     ln January 2009, Chaplain Maloney conducted an investigation regarding

Plaintiff's handling of a death bed visit for an inmate.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 94

[Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation]

*with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph

with supporting record citation].)

95.     Based on Chaplain Maloney's investigation, he learned that Plaintiff had received

a call on December 31, 2008, informing him that the step-father of an inmate was critically ill.

(*Compare* Dkt. No. 32, Attach. 1, at ¶ 95 [Def.'s Rule 7.1 Statement, asserting fact and

supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response,

failing to deny fact in matching numbered paragraph with supporting record citation].)

96.     ln accordance with Directive 4206, and as set forth in the "Report of Grave Illness/Death in Inmate's Family" form attached as part of the Directive, Plaintiff was supposed to confirm the grave illness with the hospital. Plaintiff was also to verify the family relationship between the inmate and the step-father as soon as possible after receiving the call and then notify the inmate.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 96 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

97.     Plaintiff did not contact the hospital to confirm that the inmate's step-father was gravely ill until January 2, 2009, two days after he received the call, and he also notified the inmate concerning his step-father's grave illness on that same date.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 97 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

98.     Upon verifying the information on January 2, 2009, Plaintiff reported to Deputy Superintendent of Security Hessel that the inmate's step-father had less than 24 hours to live. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 98 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

99.     As part of Chaplain Maloney's investigation, he spoke to Deputy Superintendent who advised that he instructed Plaintiff to contact the inmate's family and explain to them that if the patient died while the inmate was in transit he would not be able to go on a funeral trip. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 99 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

100.    Deputy Superintendent also asked Plaintiff to let him know what the inmate and family wanted to do considering the situation. Plaintiff never got back to Deputy Superintendent concerning this issue.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 100 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

101.    Chaplain Maloney further learned that on January 4, 2009, the inmate approached Rev. Nace at Gowanda C.F. concerning his death bed visit since his family was told by Plaintiff that he would be making a death bed visit and he had still not left the facility.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 101 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

102.    According to Rev. Nace, he called the inmate's family and confirmed that they were told by Plaintiff that the inmate would be making a death bed visit. Rev. Nace was also advised by the family and the hospital that the hospital had prepared the inmate's step-father for a visit by reducing his medication.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 102 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

103.    Rev. Nace completed the necessary paperwork on January 4, 2009, and the inmate was taken on his death bed visit.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 103 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

104.     Plaintiff failed to properly and timely respond to the call he received concerning the grave illness of an inmate's family member in violation of Directive 4206. His actions were unacceptable.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 104 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

105.     By memorandum dated January 5, 2009, Chaplain Maloney advised Deputy Superintendent McNamara about his investigation regarding Plaintiff s improper and untimely handling of the inmate's death bed visit.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 105 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

l06.     Based upon Plaintiff's failure to properly handle the death bed visit in accordance with DOCS directives, his failure to follow instructions of the Deputy Superintendent of Security, and the report provided to Deputy Superintendent McNamara by Coordinating Chaplain Maloney concerning these issues, Deputy Superintendent McNamara issued Plaintiff a formal counseling memorandum on January 29, 2009.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 106 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

Implementation of the Proposed Penalty of Termination Against Plaintiff

l07.     By DEP monthly report, Deputy Superintendent McNamara advised the Bureau of Labor Relations of the two formal counselings that Plaintiff was given in January 2009.

(*Compare* Dkt. No. 32, Attach. 1, at ¶ 107 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

108.    Based on Plaintiff s various violations of his DEP, Representative Bloomingdale notified Plaintiff by letter dated February 2, 2009, that DOCS had made a determination to implement the proposed penalty of termination contained in the June 12, 2007, Notice of Discipline.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 108 [Def.'s Rule 7.1 Statement, asserting facts and supporting assertions with accurate record citation] *with* Dkt. No. 33, at ¶¶ 6, 7 [Plf.'s Rule 7.1 Response, denying part of facts but not supporting denials with accurate record citations].)

109.    Plaintiff was permitted to provide any pertinent information to the Director Brown for consideration before a final determination was made.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 109 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 6 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

110.    Director Brown, with input from Representative Bloomingdale, determined to terminate Plaintiff's employment effective February 13, 2009.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 110 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

111.    By letter dated February 18, 2009, Plaintiff's attorney submitted a response on behalf of Plaintiff.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 111 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

112.    By letter dated February 20, 2009, Representative Bloomingdale advised Plaintiff's counsel that DOCS' decision to terminate Plaintiff's employment was not altered and was to be effective February 13, 2009.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 112 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

113.    The decision to terminate Plaintiff was based upon his misconduct and his violations of the terms and conditions of his DEP.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 113 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

114.    The decision to terminate Plaintiff was not made at the facility level.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 114 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

115.    At no time did Director Brown ever instruct anyone at Gowanda C.F., including the Deputy Superintendent of Programs, to find a reason to terminate Plaintiff.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 115 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 15 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

116.    At no time did Director Brown base any decision, or take any action, based on Plaintiff's race or religion. All of his decisions and actions were based on his professional

judgment and for employment reasons. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 116 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

117.    At no time did Representative Bloomingdale base any decision, or take any action, based on Plaintiff's race or religion. All of his decisions and actions were based on his professional judgment and for employment reasons. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 117 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

118.    At no time did Deputy Superintendent McNamara base any decision, or take any action, based on Plaintiff's  race or religion. All of her decisions and actions were based on her professional judgment and for employment reasons. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 118 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 5 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

119.    At no time did Leslie McNamara make any decision, take any action, or fail to take any action, in retaliation for the Plaintiff asking to use the county bus to commute to work or for making any complaints. (*Compare* Dkt. No. 32, Attach. 1, at ¶ 120 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33, at ¶ 8 [Plf.'s Rule 7.1 Response, denying part of fact but not supporting denial with accurate record citation].)

120.     At no time did Chaplain Maloney base any decision, or take any action, based on Plaintiff's race or religion. All of his decisions and actions were based on his professional judgment and for employment reasons.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 121 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

121.     At no time did Assistant Deputy Superintendent Awopetu base any decision, or take any action, based on Plaintiff's race or religion. All of his decisions and actions concerning Plaintiff in November 2008 were based on his professional judgment and for employment reasons.  (*Compare* Dkt. No. 32, Attach. 1, at ¶ 122 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 33 [Plf.'s Rule 7.1 Response, failing to deny fact in matching numbered paragraph with supporting record citation].)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).

However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).  As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id*.

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[2]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[3]  As has often been recognized

---

[2]      *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[3]      *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[4]

Of course, when a non-movant has failed to respond to a movant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the movant's motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the movant's motion does, is lighten the movant's burden on its motion.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to be admitted, to the extent that those facts are supported by evidence in the record, where the nonmoving party has willfully failed to properly respond to that statement.[5]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local

---

[4]     *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

[5]     Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

Rule 7.1(b)(3).[6]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

B.      **Standards Governing Plaintiff's Claims**

Because Defendant has (in its memoranda of law) recited the correct legal standards governing Plaintiff's claims and Defendant's defenses, the Court will not repeat those standards in this Decision and Order, which is intended primarily for the review of the parties.

III.   **ANALYSIS**

After carefully considering the matter, the Court grants Defendant's motion for the reasons stated in its memoranda of law.  *See, supra,* Part I.B. of this Decision and Order.  To those reasons the Court adds only two points.

---

[6]      *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

First, before responding to Defendant's motion, Plaintiff repeatedly received notice of the consequences of failing to file a proper response to Defendant's Statement of Material Facts, and/or failing to file an opposition memorandum of law.  Specifically, shortly after he filed this action, he received a courtesy copy of the District's Local Rules of Practice (including, of course, Local Rules 7.1[a][3] and 7.1[b][3]), and a courtesy copy of the District's *Pro Se* Handbook (pages 39 and 40 of which explained the relevant portions of Local Rules 7.1[a][3] and 7.1[b][3]).  (Dkt. Nos. 3, 9.)  Indeed, with those documents, he received a reminder of the following rules:

- If your opponent files a motion and you fail to oppose it, and the moving party has met its burden, the Court may consider your failure to oppose the motion as your consent to the relief requested in that motion. L.R. 7.1(b)(3).

- If your opponent files a motion for summary judgment, it shall contain a Statement of Material Facts. Among other things, you must respond to this Statement of Material Facts by admitting and/or denying each fact asserted therein supported with a record citation. If you do not so respond, the Court will deem that you have admitted your opponent's Statement of Material Facts, which could result in the Court viewing the facts very favorably to the opposing party. L.R. 7.1(a)(3).

(Dkt. No. 3.)  Moreover, when he was served with Defendant's motion, Plaintiff received a copy of the District's detailed Notification of the Consequences of Failing to Respond to a Summary Judgment Motion.  (Dkt. No. 32, at 3.)  Based on these facts, the Court is confident that Plaintiff has received sufficient notice of the consequences of his failure to properly respond to Defendant's Statement of Material Facts and memorandum of law.  *Champion*, 76 F.3d at 486. As a result, the Court finds that Plaintiff's failures were willful.

Second, far from automatically granting Defendant's motion, the Court has assured itself that Defendant has met its modest threshold burden by reviewing the record evidence cited by Defendant and the facial merit of the legal arguments asserted by Defendant. Having done so, the Court concludes that Defendant has satisfied the lightened burden created by Plaintiff's willful failure to properly respond to Defendant's Statement of Material Facts and memorandum of law.[7]

For all of these reasons, the Court grants Defendant's motion for summary judgment.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court shall correct the spelling of Plaintiff's last name on the docket as "El-Hassan," as directed in note 1 of this Decision and Order; and it is further

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 32) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

The Clerk of the Court is directed to enter Judgment for Defendant and close the case.

Dated: June 25, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[7]     The Court notes that Plaintiff's statement (in his supplemental response) that "I can testify under oath that no body have told me that" is neither notarized nor sworn to pursuant to 28 U.S.C. § 1746, despite the fact that he was advised of the need for such a notarization or affirmation on pages 35 and 36 of the District's *Pro Se* Handbook. (Dkt. No. 38.)